UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED: SEPTEMBER 3, 2008
08CV5004
JUDGE LINDBERG
MAGISTRATE JUDGE BROWN

PH

| | |
|---|---|
| **UNITED STATES SECURITIES AND EXCHANGE COMMISSION,** | |
| Plaintiff, | CASE NO. |
| v. | |
| **RICK J. BOROS, a/k/a VINCENT KWIATKOWSKI, and NORTH AMERICAN MINING VENTURES, INC.,** | JURY DEMANDED |
| Defendants. | |

## COMPLAINT

1. This matter arises out of a fraudulent offering scheme involving the sale of unregistered securities and the subsequent misappropriation of investor assets perpetrated by Defendant Rick J. Boros ("Boros") and the corporation he controls, Defendant North American Mining Ventures, Inc. ("North American Mining").

2. Defendant Boros conducted most of the activities described herein using his alias, Vincent Kwiatkowski. Boros has used this alias for over thirty years and has obtained a second birth certificate and a social security number under this alias.

3. In May 2005 Defendant Boros began promising investors that they could obtain returns up to 15 times their initial investment within five years if they entrusted their money to Boros to invest in his "low-risk" gold and silver mines in Durango, Mexico. Between May 2005 and June 2007 Defendant Boros, using the alias Vince

Kwiatkowski, obtained at least $1.2 million from approximately 17 investors. A number of these investors were elderly and/or retired.

4. Defendant Boros has misappropriated virtually all of the investors' funds. For example, from May 2005 through June 2007, he transferred at least $132,750 directly into accounts in his own name or that he controls and spent at least $358,358 of investor funds to pay his own personal credit card debt, to lease and maintain three BMW automobiles, and to pay for his household expenses and his daughter's college tuition. Boros also spent investor funds to buy clothing for his secretary and wife including handbags and lingerie at Nordstrom's, and "women's accessories" at a store named "Lover's Lane" in Orland Park, Illinois, and to pay for salon services and visits to spas.

5. Defendant Boros has repeatedly refused to return the investors' funds to them, providing a variety of excuses for his refusals. However, he has continued to reassure investors, including as recently as late May or early June 2008, that their funds eventually would be returned to them.

6. Through the activities alleged in this complaint, Defendants Boros and North American Mining have, and unless enjoined, will continue, directly and indirectly, to engage in transactions, acts, practices or courses of business which are violations of Section 5 of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. § 77(e)], Section 17(a) of the Securities Act [17 U.S.C. § 77q(a)], and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder.

7.  The U.S. Securities and Exchange Commission ("Commission") brings this action pursuant to Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)], and Sections 21(d) and 21(e) of the Exchange Act [15 U.S.C. §§ 78u(d) and 78u(e)].

## JURISDICTION

8.  This Court has jurisdiction pursuant to Section 22 of the Securities Act [15 U.S.C. § 77v] and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

9.  The acts, practices and courses of business constituting the violations alleged herein occurred within the jurisdiction of the United States District Court for the Northern District of Illinois and elsewhere.

10. Defendants are inhabitants of, and transact business in, the Northern District of Illinois.

11. The Defendants, directly and indirectly, have made use of the mails, the means and instrumentalities of transportation and communication in interstate commerce, and the means and instrumentalities of interstate commerce in connection with the transactions, acts, practices and courses of business alleged herein.

## DEFENDANTS

12. **Rick J. Boros**, age 67, purports to be the president of Defendant North American Mining Ventures, Inc. (and under his alias of Vincent Kwiatkowski, the vice president of operations) and the Chief Operating Officer of the Mexican mining corporation Milagro del Oro, S.A. de C.V. Defendant Boros resided in Oak Brook, Illinois until April 2008 when he moved to Hinsdale, Illinois. In October 2006 the U.S. Attorney for the Northern District of Illinois filed criminal charges against Boros and others. United States v. Calow, No. 06-cr-772-3, (N.D. Ill. Oct. 19, 2006) (Docket No. 1)

On August 8, 2007 a grand jury indicted Boros for conspiracy to import controlled substances into the United States from Mexico, conspiracy to distribute these drugs without prescriptions, and money laundering. On May 20, 2008 a jury returned a verdict of guilty against him on all three counts. Boros is scheduled to be sentenced sometime after October 20, 2008.

13. **North American Mining Ventures, Inc.** Defendant Boros incorporated North American Mining Ventures, Inc. ("North American Mining") on August 10, 2005. Boros purported to operate Defendant North American Mining out of his home in Oak Brook, Illinois; although he moved to Hinsdale, Illinois in April 2008, Boros has not advised investors that North American Mining moved from his Oak Brook address. North American Mining is not registered with the Commission in any capacity.

## FACTUAL ALLEGATIONS

14. In May 2005 Defendant Boros began telling prospective investors about gold and silver mines in Durango, Mexico that would be purportedly owned by a Mexican company named Milagro del Oro, S.A. de C.V.

15. Defendant Boros told at least one investor in June 2005 that he intended to form a new business venture called "Milagro del Oro, S.A. de C.V." and that this business venture would operate these gold and silver mines. Boros then gave this investor a document entitled Milagro del Oro, S.A. de C.V. Business Plan ("Milagro Business Plan").

16. Using his alias of Vincent Kwiatkowski, Defendant Boros told investors that, as set forth in the Milagro Business Plan, he was the Chief Operating Officer of

4

Milagro del Oro, S.A. de C.V. and a member of management. He told at least one investor that he was the "brains behind the operation" and supervised it all.

17. The Milagro Business Plan stated that, within the first five years of investing in the mining venture, investors would receive back fifteen times the amount that they had invested. Defendant Boros told investors that it was a very low risk investment. The Milagro Business Plan stated that the venture used a business model that was "poised to attain stratospheric profit margins."

18. Defendant Boros told at least one investor that dividends on an investment through North American Mining would be paid quarterly. Boros told investors they could "check out" the business venture by going to the website milagrodeloro.com.

19. The milagrodeloro.com website listed Defendant Boros's name and how to contact him in both the United States and in Mexico. It also contained a document, which could be downloaded, that described the San Rafael Mining Complex. The San Rafael Mining Complex was a mine which Milagro del Oro ostensibly owned and mined, and one in which members of the public could invest.

20. Defendant Boros operated at least one other website, unixgroup.com, where offering documents, including the San Rafael Mining Complex document, could be viewed and downloaded.

21. On August 10, 2005 Defendant Boros incorporated North American Mining, a privately-owned company, in Delaware. Boros is the president of North American Mining. Boros operated North American Mining out of his house.

22. After he incorporated North American Mining, Defendant Boros told prospective investors that Milagro del Oro planned to transfer ownership of the mines to

a limited partnership that then could operate the mines. He advised prospective investors that they could purchase interests in this limited partnership, called North American Mining Ventures Limited Partnership, which would operate the mines. The newly incorporated North American Mining would be the general partner of the limited partnership.

23. Defendant Boros advised prospective investors that investing in his mining securities was a "low risk, high return" investment. He promised some they would obtain ten times their initial investment "quickly", meaning probably within one year.

24. Defendant Boros provided investors with documents claiming that, even if only 50% of the reserves located at the mines were recovered, the reserves were worth over $248 billion. These statements ostensibly were supported by estimates conducted by governmental and independent engineering sources.

25. Defendant Boros retained two Canadian firms to promote the sale of interests in the limited partnerships. One of the firms assisted in drafting a number of documents that Boros reviewed and subsequently gave out to both existing investors and prospective investors.

26. Some of the offering documents that Defendants Boros and North American Mining provided to investors and prospective investors claimed that the mines in Durango, Mexico had "proven" reserves of $157 billion dollars. These offering documents also claimed these mines had options on additional properties believed to contain twice that amount of gold.

6

27. The Boros offering materials stated that investing in the mines offered "the best combination of low risk and high return" and that such investments were "fiscally conservative."

28. Boros gave investors copies of purported projected budgets and outputs for various mines, geological and engineering reports, assayer's reports, certificates of mine production from Mexican officials and numerous photographs of the mines.

29. One offering document even included photographs of Former Mexican President Vicente Fox standing next to an individual that the document falsely stated was Boros. Defendant Boros admitted to the Commission staff that he is not in the photograph and does not know who the individual is standing next to Vicente Fox.

30. Offering documents identified Boros as the president of North American Mining while also claiming that Milagro del Oro had a separate officer and member of management, Vincent Kwiatkowski. The offering documents did not disclose that Vincent Kwiatkowski was simply an alias for Defendant Boros.

31. Boros's offering documents claimed that investors' funds would be used to conduct "comprehensive geological mapping" in order to "pinpoint the largest gold veins and deposits." These documents also claimed that investors' funds would be used to "expand excavation" in the current mine shafts until the mapping was completed and "large scale excavation can begin at the rate of 1,500 combined tons per day."

32. Boros orally stated to at least one other investor that, if she wanted to withdraw her principal, she could be "cashed out" once enough other investors were participating.

7

## DEFENDANTS MISAPPROPRIATED INVESTOR ASSETS

33. Between May 2005 and June 2007 Defendants Boros and North American Mining raised at least $1.2 million from at least 17 investors in connection with the offer and sale of limited partnerships that purportedly operated gold and silver mines in Mexico.

34. Defendant Boros opened four bank accounts in which he deposited funds from investors in North American Mining. Boros began misappropriating investors' funds from these accounts almost immediately.

35. Boros spent the investors' misappropriated funds on himself and his personal expenses. For example, over the 25 month period from May 2005 to June 2007, Boros wrote checks to himself from the North American Mining corporate accounts and transferred at least $132,750 to other bank accounts in his own name or over which he had control. He also sent at least $251,542 in checks to friends and associates and $46,800 in checks to his third wife.

36. Defendant Boros also used at least $358,358 in investor funds on personal expenses including paying for his personal credit card debt. Boros used investor funds deposited into the North American Mining accounts to pay his American Express bills, which totaled thousands of dollars every month. Boros's expenses charged on his American Express card and paid for from the North American Mining accounts included a light to whiten his teeth, eyeglasses, thousands of dollars of charges at both Costco and Walmart, Lego toys one week before Christmas and charges at Chuck E Cheese.

37. Boros also leased and maintained three BMW automobiles and paid for his household expenses, his daughter's college tuition, clothing for his secretary, wife and

children, salon services and expensive restaurants using investor funds. Boros gave his secretary his American Express card during the months of August to November 2005 and paid all of her personal charges, including clothing, shoes, handbags and lingerie at Nordstrom's, visits to spas and beauty salons and "women's accessories" at a store named "Lover's Lane" in Orland Park, Illinois. He also allowed his wife to use his American Express card. Between December 2005 and April 2007, his wife charged makeup, salon services, shoes, clothes and cash advances on Boros' American Express card – most of which Boros subsequently paid from the North American Mining corporate accounts. In January 2007 he wrote a check on a North American Mining corporate account, intending to use investor funds to pay country club dues. Defendant Boros's check, however, was returned for insufficient funds.

38.     Defendant Boros claimed in testimony before the Commission staff that every expense paid for from the North American Mining bank accounts was a proper and necessary corporate expense.

## BOROS DECEIVED INVESTORS AND OTHERS ABOUT THE OFFERING PROCEEDS

39.     Defendant Boros had told investors they could expect to receive "dividends" or "returns" within eight to twelve weeks of their initial investments.

40.     The first investors in Defendants' mining-related securities invested in May of 2005. Beginning in at least January 2006 investors asked Defendant Boros when they could expect to receive returns on their investment.

41.     Defendant Boros met the investors' questions, as to why they were not receiving the large and frequent returns on their investments that they had been led to expect, with a number of excuses. These excuses included that the work was taking

9

longer than expected, that more roads had to be built than had been anticipated and that large rainfalls had slowed productivity and washed out roads that had already been built.

42. Defendant Boros sometimes responded to investors who complained about the lack of return on their investments by issuing them a small check written on one of the North American Mining investor bank accounts. From March 2006 through July 2006, Defendant Boros issued at least $24,950 in checks to investors that complained. In fact, the checks were funded from sums from other investors, thus creating a Ponzi scheme.

43. Various investors eventually began to ask Defendant Boros to return their investment in full. Defendant Boros referred some of them to the purported general counsel of North American Mining. Several investors subsequently wrote to this individual on more than one occasion, requesting a full return of their investment. The investors never received any of their investment principal back.

44. Defendant Boros told other investors that he planned to sell the gold and silver mines and that when that transaction was completed, he would return their original investments. Defendant Boros told the Commission staff in July 2007 that he was negotiating with a public company that invested heavily in mines and that this public company had formed a special subsidiary for his Durango, Mexico mining-related interests. The company with whom defendant Boros purportedly was negotiating is an internet-based publicity firm and does not purchase other companies.

45. Defendant Boros told still other investors that he planned to take Defendant North American Mining public and then to sell all of the investors' mining-related interests, at which point he would repay all of their investments. On June 4, 2007,

Defendant Boros filed a Motion in his criminal case pending in the Northern District of Illinois. U.S. v. Calow, Docket No. 75. The Motion sought permission to leave the jurisdiction so that Defendant Boros could purportedly meet with "his legal team and numerous bankers" in New York and Washington. Id. at 2. The purpose of the meeting was purportedly to "bring to fruition" in December 2007 the Initial Public Offering ("IPO") of Defendant Boros's "venture capital project in the mining industry." Id. No IPO of Defendant Boros's "project" took place in or after December 2007.

46. Defendant Boros testified to Commission staff in July 2007 that he had neither met with nor retained any lawyers or bankers in connection with any disposition of defendant North American Mining. He also testified that he had no intention of taking Defendant North American Mining public.

47. Defendant Boros told other investors that he could not return their money to them because their funds were located in a bank account that federal authorities had "frozen." No federal agency has ever "frozen" any of Defendants' bank accounts.

48. Boros has reassured investors as recently as late May or early June 2008 that they would receive their principal and promised returns in the near future.

## COUNT I

**Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder**

49. Paragraphs 1 through 48 are hereby realleged and incorporated by reference.

50. Defendant Boros and defendant North American Mining, singly or in concert, in connection with the purchase and sale of securities, by the use of the means and instrumentalities of interstate commerce and by use of the mails, directly and

11

indirectly: used and employed devices, schemes, and artifices to defraud; made untrue statements of material fact and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and engaged in acts, practices, and courses of business which operated or would have operated as a fraud and deceit upon purchasers and sellers and prospective purchasers and sellers of securities.

51. Defendants Boros and North American Mining acted knowingly or recklessly when they engaged in the fraudulent conduct described above.

52. By reason of the foregoing, Defendants Boros and North American Mining violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## COUNT II

### Violations of Section 17(a)(1) of the Securities Act

53. Paragraphs 1 through 48 are hereby realleged and incorporated by reference as though fully set forth herein.

54. By engaging in the conduct described above, Defendants Boros and North American Mining, in the offer and sale of securities, by the use of the means and instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, have employed devices, schemes and artifices to defraud.

55. Defendants Boros and North American Mining acted knowingly or recklessly when they engaged in the fraudulent conduct described above.

56. By reason of the foregoing, Defendants Boros and North American Mining violated Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

## COUNT III

**Violations of Section 17(a)(2) and (3) of the Securities Act**

57. Paragraphs 1 through 48 are hereby realleged and incorporated by reference as though fully set forth herein.

58. By engaging in the conduct described above, Defendants Boros and North American Mining, in the offer and sale of securities, by the use of the means and instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, have:

(a) obtained money or property by means of untrue statements of material fact or by omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

(b) engaged in transactions, practices, or courses of business that operated or would operate as a fraud or deceit upon the purchasers of such securities.

59. By reason of the foregoing, Defendants Boros and North American Mining have violated Sections 17(a)(2) and (3) of the Securities Act [15 U.S.C. § 77q(a)(2) and (3)].

## COUNT IV

**Violations of Sections 5(a) and 5(c) of the Securities Act**

60. Paragraphs 1 through 48 are hereby realleged and incorporated by reference.

61. By engaging in the acts and conduct alleged above, Defendants Boros and North American Mining, directly or indirectly, made use of the means and instruments of transportation and communication in interstate commerce and of the mails to sell and

offer to sell securities in the form of interests in limited partnerships through the use and medium of offering materials and otherwise, securities to which no registration statement was in effect; and carried such securities and caused them to be carried through the mails and in interstate commerce by the means and instruments of transportation for the purpose of sale and delivery after sale.

62. No valid registration statement was filed or was in effect with the Commission, in connection with interests in the interests in limited partnerships.

63. No valid exemption from registration under the Federal securities laws existed for these offerings of interests in the interests in limited partnerships.

64. By reason of the foregoing, defendant Boros has violated and, unless enjoined, will continue to violate Section 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

## **RELIEF REQUESTED**

WHEREFORE, the Commission respectfully requests that this Court:

**I.**

Find that Defendants Boros and North American Mining committed the violations alleged above;

**II.**

Grant an Order of Permanent Injunction, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently enjoining Defendants North American Mining and Boros a/k/a Vincent Kwiatkowski, and each of their agents, servants, employees, attorneys, and those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, and each of them from,

directly or indirectly, engaging in the transactions, acts, practices or courses of business described above, or in conduct of similar purport and object, in violation of Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. § 77e(a) and § 77e(c)] and 17(a)(1), (2) and (3) of the Securities Act [15 U.S.C. § 77q(a)] and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder.

### III.

Issue an Order requiring Defendants Boros and North American Mining to disgorge the ill-gotten gains that they received as a result of their wrongful conduct, including prejudgment interest.

### IV.

With regard to Defendants Boros's and North American Mining's violative transactions, acts, practices and courses of business set forth herein, issue an Order imposing upon Boros and North American Mining appropriate civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

### V.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

### VI.

Grant an Order for any other relief this Court deems appropriate.

Respectfully submitted,

*Sally Hewitt*
―――――――――――――――――
Sally J. Hewitt
Charles J. Kerstetter
John E. Birkenheier
Attorneys for Plaintiff
U.S. Securities and Exchange Commission
175 West Jackson Blvd., Suite 900
Chicago, IL 60604
(312) 353-7390

September 3, 2008

16